UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ALFATAH STEWART,                    :
                                    :           PRO SE
                    Petitioner,     :
                                    : 05 Civ. 0566 (WHP)(THK)
                                    :
        -against-                   :
                                    : **REPORT AND RECOMMENDATION**
SUPERINTENDENT GARY GREENE,         :
                                    :
                    Respondent.     :
------------------------------------X

**TO: HON. WILLIAM H. PAULEY, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Petitioner Alfatah Stewart brings this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his April 12, 2000 conviction in New York State Supreme Court, New York County, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law § 125.25(1)). Petitioner was sentenced to an indeterminate prison term of 25 years to life. In a decision dated June 25, 2002, the Appellate Division, First Department affirmed Petitioner's conviction. See People v. Stewart, 745 N.Y.S.2d 151, 151, 295 A.D.2d 249, 249 (1st Dep't 2002), lv. denied, 752 N.Y.S.2d 601, 579, 99 N.Y.2d 540, 540 (2002).

Petitioner raises seven claims in his Petition: (1) trial counsel failed to provide him effective assistance; (2) he was denied effective assistance of appellate counsel; (3) his constitutional rights were violated when he was denied a reasonable opportunity to testify and present evidence before the grand jury;

1



COPIES MAILED
TO COUNSEL OF RECORD ON 8/10/09

(4) the trial court deprived him of his Confrontation Clause rights and his due process right to present a defense when it did not allow him to impeach his own witness; (5) the trial evidence was insufficient as a matter of law to establish his guilt; (6) the prosecution violated its obligations under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), when it did not disclose the identity of a witness who had identified Petitioner in a lineup; and (7) a prosecution witness's in-court identification of Petitioner should have been suppressed as unduly suggestive. (See Petition for Writ of Habeas Corpus, filed Jan. 14, 2005 ("Pet."), at 5-6, 8-26; Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, dated Mar. 16, 2009 ("Resp't Mem."), at 3.)

The Petition was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), on November 18, 2008. The Opposition to the Petition was filed on March 16, 2009, and Petitioner's Reply was filed on April 27, 2009. Having considered the parties' submissions and the state court record, for the reasons that follow the Court respectfully recommends that the Petition be denied and Petitioner's claims be dismissed with prejudice.

## BACKGROUND

### I. The Crime

The following facts were adduced at Petitioner's trial:

2

On June 15, 1997, as Huey Phillips and Octavio Harding were walking home from St. Nicholas Park, in the West Harlem neighborhood of Manhattan, Phillips saw two men in a fistfight near 128th Street. (See Trial Tr. vol. 2, August 2-9, 1999 ("Tr. 2"), at 405-08.) One of the men was Leroy Hargis, a local "numbers" runner, who had worked in the neighborhood for approximately fifteen years and operated primarily from the steps of his apartment building at 6 St. Nicholas Terrace, between 127th and 128th Streets. (See id. at 349-51, 355-56.) The other man was Conrad Layton, another numbers runner, who ran gambling operations from a pizza parlor that he owned at the corner of 127th Street and St. Nicholas Terrace. (See id. at 351-54.)

Five or ten minutes later, Phillips and Harding saw Petitioner and William Bunce on 127th Street. (See id. at 413.) Phillips spoke with Bunce and, along with Layton, the men walked to Layton's pizza parlor. (See id. at 419, 423). Outside, Layton told Phillips that he had just been in a fight with Hargis and asked if Phillips knew someone who could "handle some business" for $5,000. (See id. at 421:22-23; see also id. at 420-25.) Phillips declined, but Petitioner offered, "[M]aybe I can help you." (See id. at 424:23.) Petitioner and Layton then entered the pizza parlor without the other men. (See id. at 424-25). When Petitioner rejoined Bunce, Phillips, and Harding, he appeared "happy" and said to Bunce, "Yeah, it's on." (See id. at 426:1-7.)

3

Two days later, on June 17, 1997, at approximately 11:00 a.m., Phillips was playing basketball in St. Nicholas Park. (See id. at 429.) Petitioner arrived and spoke with Phillips briefly before Bunce arrived. (See id. at 430-31.) Petitioner was wearing a dark shirt and pants, and his hair was in braids. (See id. at 433, 558, 619.) Bunce and Petitioner spoke for a few minutes and then, as they were leaving the park, Petitioner lifted his shirt, exposed the handle of a gun, and said "[I]t's on." (See id. at 435:15; see also id. at 435-36.)

A few minutes later, gunshots were heard near 6 St. Nicholas Terrace. (See id. at 470-72.) Immediately thereafter, a man in a dark shirt with braids was seen adjusting something in his waistband before running down Dead Man's Hill. (See Trial Tr. vol. 3, Aug. 10-18, 1999, ("Tr. 3"), at 924-28, 940-41, 1049, 1052-55, 1067.) At about 12:10 p.m., the police found Hargis dead from gunshot wounds in the lobby of 6 St. Nicholas Terrace. (See id. at 870.)

Police officers arrested Bunce and Petitioner on July 9 and 10, 1997, respectively. (See id. at 1094, 1103.) Also on July 10, Kenneth Nunez viewed a lineup and identified Petitioner as the gunman. (See Tr. 2 at 726-27.) Additional witnesses were shown photo arrays and other lineups. (See Trial Tr. vol. 1, Oct. 21, 1997 ("Tr. 1") at 18, 20.)

4

## II. Grand Jury Proceedings

The grand jury convened on July 15, 1997 to investigate the events of June 17, 1997. Petitioner served notice that he wished to testify before the grand jury, as allowed under New York Criminal Procedure Law ("C.P.L.") § 190.50. Petitioner's newly assigned trial counsel asked the court to extend the grand jury's term by an additional week to allow him time to investigate, prepare witnesses, and gather documents. (See Pet. at 11.) After Justice Brenda Soloff denied Petitioner's request, Petitioner's trial counsel withdrew his request to have Petitioner testify before the grand jury, claiming he would not have adequate time to prepare Petitioner. (See id.; Respondent's Answer, dated Mar. 10, 2009 ("Resp't Ans.") Exhibit ("Ex.") A at 9-10.) The grand jury indicted Petitioner on the charge of second degree murder. On August 12, 1997, Petitioner moved to dismiss the indictment, claiming he was denied a reasonable opportunity to testify before the grand jury. (See Resp't Ans. Ex. B.) The motion was denied by the New York Supreme Court on the grounds that the prosecution had complied with its obligations under C.P.L. § 190.50. (See Resp't Ans. Ex. C.)

## III. Pre-Trial Hearing

At a pre-trial hearing held on July 20, 1999, defense counsel and the prosecutor discussed a female witness, who had tentatively identified Petitioner from a police lineup, and whose identity was withheld under a protective order. The witness stated that the

person who murdered Hargis was either number one (a lineup stand-in) or number five (Petitioner), but that the person who did the shooting had braids. (See Tr. 1 at 21-22.) The prosecution stated that it did not plan to call this woman as a witness and, if she were called, she would not be asked questions about the identification. (See id. at 25-26.) The witness's identity was not disclosed.

## IV. The Trial

### A. Respondent's Case

The prosecution put on over a dozen witnesses. Huey Phillips, who had known both Petitioner and Bunce for over a decade, testified that, at the time of the shooting, Petitioner wore his hair in two-inch braids. (See Tr. 2 at 335, 394, 396, 558, 615.) In addition, Phillips testified that he interpreted Layton's statement, about needing someone to take care of business for $5,000, to mean that Layton wanted someone to either beat or kill Hargis. (See id. at 421:9-11.) Phillips also was present in the neighborhood on the day of the murder. He testified that he heard two gunshots and saw Bunce standing outside of 6 St. Nicholas Terrace, looking back and forth. (See id. at 468-72.) He then heard four more gunshots. (See id. at 441:24-25.) Other prosecution witnesses also heard gunshots. (See id. at 716, 755; see also Tr. 3 at 1225).

Kenneth Nunez testified that right before the murder he walked past Hargis, who was sitting outside his apartment building, and

6

saw Petitioner leaning against a car further up the block.    (See Tr. 2 at 704, 709-10.)

Both Phillips and Nunez identified Petitioner as the man who exited from 6 St. Nicholas Terrace with his hands under his shirt and then joined Bunce in running down Dead Man's Hill.  (See id. at 473-75, 619-20, 714.) A few days after the shooting, Phillips saw Petitioner and noticed that his hair had been close cropped and that he no longer had braids.   (See id. at 536-37.)   From their sightings of Petitioner in the following weeks, other witnesses corroborated that Petitioner had recently shortened his hair. (See id. at 734; Tr. 3 at 1173.)

The  prosecution  also  called  Leslie  Eugene  Neptune.    He testified that he saw a black man with short hair and his hand near his waistband running down Dead Man's Hill.  (See Tr. 2 at 805-09, 814-15, 827.)  He also identified Petitioner in court, testifying that Petitioner was either the fleeing gunman or looked like him. (See  id.  at  825.)    During  Neptune's  testimony,  the  parties stipulated that a police report indicated that Neptune had told the police shortly after the murder that the gunman had covered his face with his hand as he ran.   (See id. at 821:18-21.)

David Irons was yet another prosecution witness.   After his arrest, Petitioner met Irons while incarcerated on Rikers Island. Irons testified that Petitioner admitted that he killed a numbers runner and that Petitioner collaborated with Irons to frame Bunce for the murder.   Petitioner had given Irons a script to give to his

7

girlfriend, which was to be read to a private investigator working on Petitioner's behalf, in which the girlfriend was to state that she saw two men approach and shoot Hargis, and that Petitioner was not one of the men.   Petitioner had agreed to pay Irons's girlfriend $1,000 fo her assistance.   The script was placed in evidence.   Irons further testified that Petitioner solicited other inmates to falsely testify that Bunce had confessed to them that he had done the shooting.   (See Tr. 3 at 1356-59, 1361-69, 1374-78, 1393-96.)

The prosecution called a number of other witnesses who lived in the area of 6 St. Nicholas Terrace.   Each testified generally consistently to the fact that, on the day of Hargis's murder, he or she heard gunshots and then saw a man fleeing from the building and down Dead Man's Hill.   The man was wearing a dark shirt and pants, and a black "do rag" on his head.   He was stocky, strongly built, and appeared to be between 5'6" and 5'9". (See Tr. 2 at 641-46, 650-54, Tr. 3 at 884-86, 887, 900, 902, 926-28, 940-41, 1044, 1048-49, 1051, 1052-55, 1066.)   There was an admission by Petitioner that he was 5'7" tall and weighed 175 pounds. (See Resp't Ans. Ex. M at 17.)   At the conclusion of the prosecution's case, Petitioner's trial counsel moved for an order of dismissal, arguing that the identification of Petitioner was not established at trial by credible evidence.   (See id. Tr. 3 at 1440.)

B. <u>Petitioner's Case</u>

Petitioner's sister, Tanya Stewart, testified that on May 15, 1997, Petitioner moved into her apartment on Tiebout Avenue in the Bronx. (<u>See</u> Trial Tr. vol. 4, Aug. 20, 1999 ("Tr. 4") at 2024, 2057-58, 2063.) At that time, Petitioner was wearing his hair in braids, but he soon cut his hair short and close to the scalp. (<u>See</u> <u>id.</u> at 2035, 2061-63, 2067.)

Petitioner's girlfriend, Tasha Cucutta, testified that on June 15, 1997, at approximately 12:00 p.m., Petitioner left his sister's apartment and came to visit her. (<u>See</u> <u>id.</u> at 2032.) He arrived at Cucutta's apartment on 133rd Street and Amsterdam Avenue in Manhattan at around 2:00 p.m. (<u>See</u> <u>id.</u> at 2200-01.) Family members of Cucutta commented on Petitioner's new haircut. (<u>See</u> <u>id.</u> at 2201.) Petitioner stayed about 30 minutes, left, and then returned between 5:00 p.m. and 6:00 p.m. (<u>See</u> <u>id.</u> at 2202, 2271.) Afterward, Petitioner and Cucutta went to Stewart's apartment, where they drank beers with several friends. (<u>See</u> <u>id.</u> at 2033, 2083.) After hailing a cab for Cucutta, Petitioner returned to the apartment and did not leave again that evening. (<u>See</u> <u>id.</u> at 2125.)

When Cucutta arrived at her apartment building at around 11:45 a.m. on June 17, 1997, Petitioner was waiting. (<u>See</u> <u>id.</u> at 2203-06.) Petitioner and Cucutta were together when they saw police cruisers traveling up St. Nicholas Avenue and when a bystander informed them that "the number man had just got shot." (<u>See</u> <u>id.</u> at 2223:14-15; <u>see also</u> 2212-13, 2290.)

9

Petitioner called as a witness thirteen-year-old Jennifer Willis, who lived in a third-floor apartment across the street from 6 St. Nicholas Terrace. (See id. at 1960, 1962.) On June 17, 1997, she heard gunshots and looked out the window. (See id. at 1963.) She saw a man running from the building and down Dead Man's Hill. (See id. at 1960-63, 1981-82.) On direct examination, Willis testified that she did not see the perpetrator's entire face, but only a "flash of his face," and that she would not be able to recognize the man if she saw him again. (See id. at 1963; see also id. at 1982.) Petitioner asserted that this testimony was a recent fabrication by Willis, because prior to trial she had conversed with a private investigator, viewed an array, and stated that she did not see the fleeing man in the array. (See id. 1992-96.) This implied, Petitioner argued, that she could have identified the perpetrator had he been in the array, and, thus, that the perpetrator of the crime was not Petitioner. The court did not allow Petitioner to introduce the array in evidence or to inquire further about Willis's past statements. (See id. at 1994-96.)

Petitioner also called Jamie Turner and Derrick Harris as witnesses. Turner knew Petitioner for 20 years, and Harris knew him for ten years. They testified that they were outside St. Nicholas Park on the day of Hargis's murder, smoking marijuana. They heard gunshots, ran in the direction of the shots, and saw a gun-wielding man emerge from 6 St. Nicholas Avenue. Turner

10

described the man as 5'9" tall, with a slim build, and wearing blue windbreaker pants, a navy sweatshirt, and a stocking cap or mask which prevented her from seeing his face.  Harris described the man as being 5'11" and 6'1" tall, with a medium build and wearing black jeans and a burgundy sweatshirt.  The man had the hood up, but Harris claimed to have seen his face.  Both witnesses stated that the man was not Petitioner. (See Tr. 3 at 1635-38, 1640-42, 1643, 1694-96; Tr. 4 at 1728-29, 1732-34, 1855-58, 1862.) Turner further testified that Petitioner had short hair throughout the summer of 1997, while Harris testified that Petitioner wore his hair in braids both before and after the day of the shooting. (See Tr. 3 at 1667-78; Tr. 4 at 1743-44, 1747-48.)

During his summation, Petitioner's counsel argued at length that Petitioner did not kill Hargis.  (See Tr. 5 at 2493-96.)  He also attacked the credibility of the prosecution's witnesses and pointed to weaknesses in the State's case.  (See id. at 2489-2525.)

The jury convicted Petitioner of second-degree murder on August 26, 1999.  (See Resp't Mem. at 15.)  On April 12, 2002, Petitioner was sentenced to 25 years to life in prison.  (See id.)

**V. Motion to Set Aside Verdict**

Before his sentencing, Petitioner filed several pro se motions to set aside the verdict, pursuant to C.P.L. § 330.30.  (See id.) Specifically, Petitioner alleged that the verdict should be set aside on the following five grounds: (1) his trial counsel was ineffective for failing to present Petitioner and Cucutta to the

11

grand jury and to call certain witnesses at trial; (2) he had been improperly denied an opportunity to testify before the grand jury; (3) the evidence was insufficient as a matter of law to establish his guilt; (4) the prosecution committed <u>Brady</u> violations; and (5) the prosecutor improperly denigrated Petitioner and one of his witnesses.  (<u>See</u> Resp't Ans. Ex. E.)  Petitioner's motions were denied.  (<u>See</u> <u>id.</u>)

**VI. Petitioner's Motion to Vacate the Judgment**

Petitioner moved to vacate the judgment pursuant to C.P.L. § 440.10.  He cited the following three grounds: (1) he had received ineffective assistance of trial counsel when his counsel withdrew Petitioner's request to testify before the grand jury and failed to call specific witnesses at trial; (2) he had been denied his right to testify and present evidence before the grand jury; and (3) the prosecution committed <u>Brady</u> violations when it did not provide statements made to the police by Tasha Cucutta and Erroll Robinson. (<u>See</u> Resp't Ans. Ex. F.)  The motion was denied on all grounds without a hearing.  (<u>See</u> Resp't Ans. Ex. I.)

**VII. Petitioner's Appeal**

Petitioner's appellate counsel filed a brief in the Appellate Division, First Department, that raised two issues on Petitioner's behalf.  First, he argued that Petitioner had been deprived of due process when he was denied an opportunity to present evidence to the grand jury.  (<u>See</u> Resp't Ans. Ex. K at 19-27.)  Second, he asserted that the trial court had violated Petitioner's

12

Confrontation Clause rights and due process right to present a defense when it denied Petitioner the ability to impeach his own witness, Jennifer Willis.  (See id. at 28-33.)

Following the grant of leave to appeal from the denial of Petitioner's § 440.10 motion, Petitioner filed a supplemental brief with the Appellate Division to appeal the denial of his § 440.10 motion, arguing that the New York State Supreme Court erred in denying the motion without a hearing. (See Resp't Ans. Ex. L.)  On June 25, 2002, the Appellate Division affirmed Petitioner's conviction.[1]  See Stewart, 745 N.Y.S.2d at 151, 295 A.D.2d at 249.

With regard to the claim that Petitioner was improperly deprived of an opportunity to testify before the grand jury, the Appellate Division found that Petitioner was given a "meaningful opportunity to consult with counsel and to prepare to testify and offer exculpatory evidence before the Grand Jury."  Id. at 152. The court also determined that the trial court properly denied Petitioner permission to impeach his own witness, based on C.P.L. § 60.35.  See id.  In addition, the court held that Petitioner's constitutional claim based on his inability to impeach his own witness was "unpreserved."  Id.  Finally, the court found that denial of Petitioner's C.P.L. § 440.10 motion without a hearing was

---

[1] The Appellate Division appears to have consolidated both appellate briefs and considered them together as Petitioner's one direct appeal.

proper, since his motion "failed to reveal an issue to be resolved
by a hearing."   Id.

The Appellate Division denied Petitioner's pro se motion for
reargument.   See People v. Stewart, 2002 N.Y. App. Div. LEXIS 8707
(2002).

Petitioner's application for leave to appeal to the New York
Court of Appeals on the same grounds (Resp't Ans Ex. P) was denied.
See Stewart, 752 N.Y.S.2d 601, 99 N.Y.2d 540.

Petitioner's pro se petition to the United States Supreme
Court for a writ of certiorari (Resp't Ans. Ex. S), based on all of
the same claims presented to the Appellate Division in both briefs,
was also denied.   See Stewart v. New York, 538 U.S. 1003, 123 S.
Ct. 1907 (2003).

**VIII. Petition for a Writ of Error *Coram Nobis***

On November 18, 2003, Petitioner filed a pro se petition in
the Appellate Division for a writ of error coram nobis.  Petitioner
asserted that: (1) the evidence at trial was not sufficient to
support the jury's finding of guilt; (2) Leslie Eugene Neptune's
in-court identification should have been suppressed; (3) the State
withheld Brady material when it did not reveal before trial the
identity of a witness who had identified Petitioner in a lineup;
(4) his trial attorney was ineffective for failing to raise these
claims; and (5) his appellate attorney was ineffective for failing
to do the same and also for failing to argue that his trial

14

attorney was ineffective.   (See Resp't Ans. Ex. T at 7.)   The Appellate Division denied the petition.   (See Resp't Ans. Ex. W.) Petitioner's request for leave to appeal to the New York Court of Appeals on the same grounds was denied.   (See Resp't Ans. Ex. X.)

## DISCUSSION

Petitioner now asserts in this proceeding the same claims as those contained in his coram nobis application, with the addition of two others.   His claims are that: (1) he was denied effective assistance of appellate counsel; (2) trial counsel failed to provide him effective assistance; (3) his constitutional rights were violated when he was denied a reasonable opportunity to testify and present evidence before the grand jury; (4) the trial court deprived him of his Confrontation Clause rights and due process right to present a defense when it did not allow him to impeach his own witness; (5) the evidence was insufficient as a matter of law to establish his guilt; (6) the prosecution failed to provide Brady material when it did not disclose prior to trial the identity of a witness who had identified Petitioner in a lineup; and (7) the in-court identification of Petitioner should have been suppressed as unduly suggestive.   (See Pet. at 5-6, 8-26.) Respondent concedes that the Petition is timely, but argues that the Petition remains partially unexhausted.   Respondent further argues that Petitioner's unexhausted claims are frivolous and that his other claims are meritless as well.

15

## I. AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000); accord Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006); Ernst J. v. Stone, 452 F.3d 186, 193 (2d Cir. 2006).  The phrase, "clearly established Federal law," limits the law governing a habeas Petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 365, 120 S. Ct. at 1499); accord Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law." <u>Henry v. Poole</u>, 409 F.3d 48, 68 (2d Cir. 2005) (citing <u>Williams</u>, 529 U.S. at 410, 120 S. Ct. at 1522). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. <u>See</u> <u>Williams</u>, 529 U.S. at 413, 120 S. Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." <u>Id.</u> at 408-10, 120 S. Ct. at 1521-22; <u>see also</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable.").

Moreover, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("This presumption of correctness is particularly important when reviewing the trial court's assessment of witness

17

credibility.").  A state court's findings "will not be overturned
on factual grounds unless objectively unreasonable in light of the
evidence presented in the state-court proceeding."   Miller-El v.
Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

## II.  Denial of Opportunity to Testify Before the Grand Jury

Petitioner contends that he was denied an opportunity
to testify before the grand jury.  (See Tr. 3 at 5, 11-13.)
Petitioner argues that his due process rights were violated when
the state court would not extend the term of the grand jury by a
week and, subsequently, when counsel was allowed to waive
Petitioner's right to testify without Petitioner's consent. (See
id. at 5, 11.)  Petitioner further contends that the trial court
erred in denying his C.P.L. § 190.50 motion to dismiss the
indictment on these grounds.[2]  (See id. at 12; Resp't Ans. Ex. B.)
However, as Respondent correctly asserts, Petitioner's complaint is
not cognizable in a habeas corpus petition.

There is no federal constitutional right to appear before a
state grand jury, as the Fifth Amendment's grand jury indictment
clause is not applicable to the states by incorporation through
the Fourteenth Amendment.  See LanFranco v. Murray, 313 F.3d 112,
118 (2d Cir. 2002) (citing Branzburg v. Hayes, 408 U.S. 665, 688

---

[2] Respondent does not dispute that Petitioner's claim regarding
the grand jury proceedings is exhausted.  Petitioner included
this claim in his direct appeal and in his application for leave
to appeal to the New York Court of Appeals.  (See Resp't Ans. Ex.
K at 19; Resp't Ans. Ex. P.)

n.25, 92 S. Ct. 2646, 2660 n.25 (1972)); Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990) (citing Hurtado v. California, 100 U.S. 516, 4 S. Ct. 111 (1884)); see also Price v. Grenier, No. 98 Civ. 2601 (LTS) (MHD), 2003 WL 22890404, at *6 (S.D.N.Y. Oct. 16, 2003) (citing Gibbs v. New York, No. 01 Civ. 5046 (DLC), 2002 WL 31812682, at *4 (S.D.N.Y. Dec. 12, 2002)) (noting that opportunity to testify before the grand jury is a right created by state law alone).   Thus, Petitioner's grand jury claim is based solely on state law and is not cognizable on federal habeas review.   See Velez v. Ercole, No. 06 Civ. 334 (LBS), 2006 WL 2742046, at *5 (S.D.N.Y. Sept. 26, 2006); see also Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)).   Moreover, "'claims of deficiencies in the state grand jury proceedings' are not cognizable in a habeas corpus proceeding when they are necessarily 'rendered harmless' by a subsequent conviction by a petit jury." Galberth v. New York, No. 06 Civ. 5728 (NRB), 2007 WL 633953, at *4 (S.D.N.Y. Feb. 28, 2007) (quoting Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989)), reconsideration denied, No. 06 Civ. 5728 (NRB), 2007 WL 949774 (S.D.N.Y. Mar. 28, 2007), and No. 06 Civ. 5728 (NRB), 2007 WL 1791262 (S.D.N.Y. June 20, 2007).

Because Petitioner's grand jury claim is not based upon any right guaranteed by federal law, and, in any event, any error in the grand jury proceeding was "rendered harmless" by his later

conviction by a jury, see Galberth, 2007 WL 633953, at *4, this Court recommends that Petitioner's grand jury claim be dismissed.

**III. Denial of Attempt to Cross-Examine Petitioner's Witness**

Petitioner argues that the state court's refusal to allow defense counsel to cross-examine or impeach Willis, Petitioner's own witness, was a violation of his rights under the Confrontation Clause and his due process right to present a defense. Respondent contends, and this Court agrees, that Petitioner has forfeited his constitutional Confrontation Clause claim. In addressing the issue, the Appellate Division concluded that limiting Willis's cross-examination was appropriate under state law, and that Petitioner's Confrontation Clause claim had been unpreserved for review. See Stewart, 745 N.Y.S.2d at 152, 295 A.D.2d at 249.

A. Independent and Adequate State Bar

Before a federal habeas court can reach the merits of a claim, it must determine whether review of the claim is barred on the basis of an adequate and independent state ground. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); Richardson v. Greene, 497 F.3d 212, 217-18 (2d Cir. 2007). A state appellate court decision holding that an issue raised on appeal was not adequately preserved at trial may potentially bar federal habeas review. See Richardson, 497 F.3d at 218-20.

Furthermore, even if the state court has also ruled, in the alternative, on the merits of the claim raised in the federal habeas action, federal habeas review is foreclosed when the court

20

has nonetheless expressly relied on a state procedural rule as an independent and adequate state ground for denying relief.   See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).   "Thus, even when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."   Green, 414 F.3d at 294 (quoting Glenn, 98 F.3d at 725).

The Court must therefore determine whether Petitioner's cross-examination claim is barred by an independent and adequate state procedural rule.

1. Independent State Procedural Rule

Under New York law, in order to preserve an issue for appeal, a contemporaneous, specific objection must be lodged at trial, and if the objection is not sustained, the objecting party must seek further relief, such as a mistrial.   See C.P.L. § 470.05(2); see also Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) ("[A] defendant must make his or her position known to the court.   The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time.   A general objection is not sufficient to preserve an issue.") (internal citations omitted); Richardson, 497 F.3d at 218 (same); Jodhan v. Ercole, No. 07 Civ. 9263 (RMB)(JCF), 2008 WL 819311, at *5 (S.D.N.Y. Mar. 28, 2008) ("Under New York law, in order to preserve

21

a claim of prosecutorial misconduct for appellate review, defense counsel is required to make a specific objection at trial, and, if his objections are sustained, to seek further relief."), Report and Recommendation adopted by No. 07 Civ. 9263 (RMB)(JCF), 2008 WL 2477457 (S.D.N.Y. June 16, 2008)); People v. Medina, 53 N.Y.2d 951, 953, 441 N.Y.S.2d 442, 443 (1981) (holding that a claim regarding a prosecutor's remarks in summation was unpreserved where the trial court sustained defendant's objection but defendant "did not request any curative instruction or move for a mistrial on [that] basis."); People v. Rogers, 281 A.D.2d 240, 241, 721 N.Y.S.2d 533, 533 (1st Dep't 2001) ("By failing to object, by making general objections, or by failing to request any further relief after objections were sustained, defendant failed to preserve her contentions.").

At trial, defense counsel did not object to the inability to cross-examine Willis, but only asked if he could continue down his line of questioning with her; moreover, he did not raise any constitutional concerns when the court replied that he could not. (See Tr. at 1994-96.)  Thus, the Appellate Division's holding that Petitioner's Confrontation Clause claim was unpreserved for review necessarily implies that it found that defense counsel did not adequately lodge a constitutional objection.  See Ashley v. Burge, No. 05 Civ. 4497 (JGK), 2006 WL 3327589, at *4 (S.D.N.Y. Nov. 3, 2006) ("The Appellate Division found the petitioner's claim 'unpreserved,' implicitly relying on New York's preservation policy

codified in New York Criminal Procedure Law ("NYCPL") §
470.05(2)."). Therefore, the Appellate Division denied
Petitioner's claim on an independent state procedural ground.

2. Adequate State Procedural Bar

The adequacy of state procedural bars to the assertion of
federal questions is itself a federal question not for the states
to conclusively decide. See Lee v. Kemna, 534 U.S. 362, 375, 122
S. Ct. 877, 885 (2002) (citing Douglas v. Alabama, 380 U.S. 415,
422, 85 S. Ct. 1074, 1078 (1965)). As a matter of federal law,
"[a] claimed procedural bar is adequate only if state courts have
applied the rule 'evenhandedly to all similar claims.'" Monroe v.
Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (quoting Cotto v.
Herbert, 331 F.3d 217, 239 (2d Cir. 2003)). However, "even though
a rule generally might be considered firmly established and
regularly followed, considered in the specific circumstances of a
case, it still might be inadequate to preclude federal review, if
its application would be 'exorbitant,' that is to say, an arid
'ritual . . . [that] would further no perceivable state interest.'"
Richardson, 497 F.3d at 218 (internal citations omitted)
(alteration in original) (quoting Lee, 534 U.S. at 366, 122 S. Ct.
at 880).

When engaging in an adequacy analysis, federal courts should
give deference to state court decisions and determine if there is
a "fair or substantial basis" for the application of the state law
to the particular case. Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir.

1999).  "[T]he question is whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances."   Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 386-87, 122 S. Ct. at 891).

In the Garvey case, the Second Circuit examined the guidelines a habeas court should use to determine the adequacy of a claimed state procedural bar:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

485 F.3d at 714 (quoting Cotto, 331 F.3d at 240).   While the factors "are not a test for determining adequacy, they are nonetheless used as guides in evaluating 'the state interest in a procedural rule against the circumstances of a particular case.'" Garvey, 485 F.3d at 714 (quoting Lee, 534 U.S. at 386-87, 122 S. Ct. at 891).

Garvey examined whether a claimed error in the admission of an identification of the defendant at trial was preserved under C.P.L. § 470.05(2).   See 485 F.3d at 714-15.   Specifically, the court

24

conducted an in-depth review of New York's preservation doctrine and observed: "[In New York, a] general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. . . . Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant[s] must specifically focus on the alleged error." Id. (citing People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995)). Garvey also noted, however, that even if there is only a general objection, when a trial court nonetheless expressly decides an issue, that also preserves the issue for appeal. See 485 F.3d at 717; see also People v. Turriago, 90 N.Y.2d 77, 83-84, 659 N.Y.S.2d 183, 186 (1997) (holding that an issue was not preserved for appeal when a lower court's observations about a related issue did not amount to an express decision on the issue in question), reargument denied, 90 N.Y.2d 936, 664 N.Y.S.2d 274 (1997). Thus, under New York law, if a defendant specifically raises an issue at trial, or if, absent a specific objection, the trial court nonetheless expressly decides the specific issue in response to a general objection, the issue is preserved for appeal. See C.P.L. § 470.05(2); see also People v. Nieves 90 N.Y.2d 426, 431 n.*, 660 N.Y.S.2d 858, 861 n.* (1997) (holding issue was preserved despite general objection because the trial court specifically ruled on the issue); see also Garvey, 485 F.3d at 717.

Applying the three Garvey factors, there can be no doubt as to the adequacy of the state procedural bar relied upon by the

Appellate Division.  First, assessing the state court's reliance on
Petitioner's procedural violation — failing to specifically object
contemporaneously — is not helpful in the context of C.P.L. §
470.05(2).  As the court in <u>Cotto</u> observed, "the lack of a . . .
[specific] objection would not, almost by definition, be mentioned
by the trial court."  331 F.3d at 242.  Similarly, the other aspect
of the first factor, whether perfect compliance would have changed
the outcome, "is less relevant" in evaluating the failure to
preserve a claim "because 'the likely impact of a contemporaneous
objection involves a certain degree of speculation.'"  <u>Ashley v.</u>
<u>Burge</u>, No. 05 Civ. 4497 (JGK), 2006 WL 3327589, at *5 (S.D.N.Y.
Nov. 3, 2006) (quoting <u>Cotto</u>, 331 F.3d at 242-43).

Second, New York precedent clearly indicates that defendants
must comply with the rule in the context of objections made to
preserve a claim of error for appellate review.  With the exception
of fundamental "mode of proceedings" errors, this rule is
applicable to both constitutional and non-constitutional claims.
<u>People v. Patterson</u>, 39 N.Y.2d 288, 294-97, 383 N.Y.S.2d 573, 576-
578 (1976), <u>aff'd</u>, 432 U.S. 197 (1977); <u>see</u> <u>People v. Paixao</u>, 23
A.D. 677, 678, 806 N.Y.S.2d 672, 673-74 (2d Dep't 2005) (holding
that defendant failed to preserve for appellate review a violation
of his Confrontation Clause rights).  In addition, an objection
must be "specifically directed at the alleged error."  <u>Gray</u>, 86
N.Y.2d at 19, 629 N.Y.S.2d at 175 (internal quotation marks
omitted).  If a defendant offers one ground for relief at trial, he

cannot rely on a different ground to argue on appeal that he was improperly denied relief.  See People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111, 113 (2001) (holding that petitioner's objection made on the basis of a trial evidence error is distinct from a Confrontation Clause objection and, thus, a hearsay objection is not sufficient to preserve constitutional claims).

Petitioner's claim was raised and decided only on the grounds of whether it was permissible under C.P.L. § 60.35 to deny Petitioner the right to cross-examine his own witness. (See Tr. 4 at 1992-97.)  As in Kello, where an objection on the basis of state evidentiary rules was insufficient to preserve Confrontation Clause claims, in this case the discussion about New York State law was insufficient to preserve any constitutional claim regarding a violation of Petitioner's Confrontation Clause rights or due process right to present a defense.  See Kello, 96 N.Y.2d at 743-44, 723 N.Y.S.2d at 113; see also Fuentes v. Ebert, No. 06 Civ. 5813 (PAC) (DF), 2009 WL 1755500, at *2 n.2, 9 (S.D.N.Y. 2009) (holding that a cross-examination objection on state law grounds did not preserve the defendant's Confrontation Clause claim); Garvey, 485 F.3d at 714 ("A general objection is not sufficient to preserve an issue . . . .") (internal citations omitted); Rogers, 281 A.D.2d at 241, 721 N.Y.S.2d at 533 ("[B]y making general objections . . . defendant failed to preserve her contentions.").

As for the third factor, Petitioner cannot have been said to

have substantially complied with the rule's requirements, because his attorney failed to specifically object on constitutional grounds.  Moreover, there was no objection lodged after the court issued its ruling, and no request for a mistrial based on the inability to cross-examine Willis.  Thus, it is clear that Petitioner did not comply with New York's contemporaneous, specific objection rule.

Accordingly, the Court concludes that Petitioner's Confrontation Clause/due process right claim is barred from review by an independent and adequate state procedural rule.

### 3. No Cause and Prejudice or Miscarriage of Justice

If a state court judgment is based on an independent and adequate state procedural rule, federal courts generally cannot review the state court judgment in a habeas corpus proceeding unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; see also Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003).  To demonstrate cause for his default, a petitioner must show "that 'some objective factor external to the defense impeded [his] efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991) (quoting

<u>Murray v. Carrier</u>, 477 U.S. 467, 488, 106 S. Ct. 2639, 2645 (1986)); <u>see</u> <u>Rolling v. Fischer</u>, 433 F. Supp. 2d 336, 346 (S.D.N.Y. 2006). Once a petitioner shows cause, the petitioner must also establish prejudice by demonstrating that there is a "reasonable probability" that, but for the constitutional violation that is the subject of the defaulted claim, the outcome of the relevant proceeding would have been different. <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 289, 119 S. Ct. 1936, 1952 (1999); <u>McClesky</u>, 499 U.S. at 494, 111 S. Ct. at 1471.

Petitioner has not argued or demonstrated "cause" for his procedural default; therefore, the Court need not consider the issue of prejudice.[3] <u>See</u> <u>McCleskey</u>, 499 U.S. at 502, 111 S. Ct. at 1474; <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985); <u>Dixon v. McGinnis</u>, 492 F. Supp. 2d 343, 352 (S.D.N.Y. 2007).

Alternatively, a claim that is barred from habeas review pursuant to independent and adequate state grounds can be considered if a petitioner demonstrates that failure to consider it would result in a miscarriage of justice. A miscarriage of justice

---

[3] Although ineffective assistance of counsel can constitute "cause," trial counsel's ineffectiveness for failing to object to the limitation on his cross-examination and impeachment of Willis is not a claim that Petitioner has asserted or established. (<u>See</u> Pet. at 21-24.) Therefore, ineffective assistance cannot serve as cause for Petitioner's procedural default. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452, 120 S. Ct. 1587, 1591 (2000) ("'A claim of ineffective assistance' . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'") (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S. Ct. 2639 (1986)).

occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496, 106 S. Ct. at 2649; see also Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998); James, 996 F.2d at 1447. "Actual innocence means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley, 523 U.S. at 623, 118 S. Ct. at 1611) (internal quotation marks omitted). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . ." Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995). The doctrine of actual innocence applies only in "extraordinary case[s]" and "credible claims of actual innocence are extremely rare." Doe v. Menefee, 391 F.3d 147, 160-61 (2d Cir. 2004) (quoting Murray, 477 U.S. at 479, 106 S. Ct. at 2642, and Schlup, 513 U.S. at 321, 115 S. Ct. at 864) (internal quotation marks omitted).

There is nothing, however, in the record to suggest that such exceptional circumstances can be demonstrated here. Although Petitioner asserts actual innocence, he cannot meet the standard to demonstrate a miscarriage of justice, since he does he not offer any new evidence of innocence. Petitioner does assert that trial counsel failed to call key witnesses, and he provided their affidavits with his C.P.L. § 440.10 motion; however, this information does not constitute new evidence since trial counsel

knew the identity of, and interviewed, these potential witnesses
before Petitioner's trial. (See Resp't Ans. Ex. F.) Moreover, as
discussed infra, trial counsel reasonably determined that these
witnesses would have been of dubious benefit to Petitioner.
Without offering new evidence of his innocence, this Court cannot
find that a miscarriage of justice occurred without "asserting that
none of the jurors acted reasonably." Lucidore v. N.Y. State Div.
of Parole, No. 99 Civ. 2936 (AJP), 1999 WL 566362, at *8 (S.D.N.Y.
Aug. 3, 1999), aff'd, 209 F.3d 107 (2d Cir. 2000); see also Dunham
v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) ("[Petitioner]
presented no new evidence of his innocence and did not make the
necessary showing required . . . to bypass the procedural bars.").
Because Petitioner cannot demonstrate that a miscarriage of justice
will result if his claim is not heard, the claim is barred from
further review.

   B. Claim is Meritless

   In any event, Petitioner's Confrontation Clause claim is
without merit. The trial court responded to Petitioner's counsel's
request to cross-examine Willis about her previous statements on
the basis of C.P.L. § 60.35. That statute provides that
impeachment of a party's own witness can only occur when the
witness gives testimony that tends to disprove the position of the
party who called him; moreover, impeachment is allowed only through
use of a prior contradictory written statement signed by the
witness or of a prior contradictory oral statement offered under

31

oath.[4]   Willis did not give a prior written statement or oral statement under oath.   Moreover, Willis's in-court testimony was not harmful to Petitioner, since she was unable to identify Petitioner as the perpetrator. (See Tr. 4 at 1992-97.)   Therefore, the trial court acted properly under New York law in prohibiting Petitioner's impeachment of Willis.

State-court rulings concerning the admission of evidence are ordinarily not subject to federal habeas review, because they do not present issues of constitutional magnitude.   See Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)).   However, the Constitution does guarantee criminal defendants "a meaningful opportunity to present

---

[4] C.P.L. § 60.35 provides:
   1. When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either [through] a written statement signed by him or an oral statement under oath contradictory to such testimony.

   . . . .

   3. When a witness has made a prior signed or sworn statement contradictory to his testimony in a criminal proceeding upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing the recollection of the witness in a manner that discloses its contents to the trier of the facts.

a complete defense." <u>California v. Trombetta</u>, 467 U.S. 479, 485,
104 S. Ct. 2528, 2532 (1984); <u>accord</u> <u>Hawkins v. Costello</u>, 460 F.3d
238, 243 (2d Cir. 2006). Consequently, in rare instances, even the
proper application of state evidentiary rules to "exclude
competent, reliable [exculpatory] evidence" may offend the
constitutional guarantee of a fundamentally fair trial. <u>Crane v.
Kentucky</u>, 476 U.S. 683, 690, 106 S.Ct. 2142, 2147 (1986).

To provide the basis for a constitutional claim, a correctly-
applied state evidentiary rule must be "arbitrary or
disproportionate to the purposes it is designed to serve," and
"infringe[] upon a weighty interest of the accused." <u>United States
v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261 (1998) (internal
quotation marks omitted). Furthermore, even in the case of an
"erroneous evidentiary ruling[]" under state law, a petitioner
still must "show that the error deprived [him] of a <u>fundamentally
fair</u> trial" to obtain habeas relief. <u>Zarvela v. Artuz</u>, 364 F.3d
415, 418 (2d Cir. 2004) (emphasis in original) (quotation marks
omitted) (quoting <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 925 (2d Cir.
1988)). To apply the latter standard, courts look to "whether the
omitted evidence evaluated in the context of the entire record
creates a reasonable doubt that did not otherwise exist." <u>Hawkins</u>,
460 F.3d at 244 (internal alterations and quotation marks omitted)
(quoting <u>Justice v. Hoke</u>, 90 F.3d 43, 47 (2d Cir. 1996)).

These principles apply to state rules against impeaching one's
own witness, known at common law as "voucher" rules. Such

33

prohibitions "may, under some circumstances, be of so little weight that a serious impairment of the right to present a defense cannot be justified." Lipinski v. New York, 557 F.2d 289, 294 (2d Cir. 1977). Thus, for example, in Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973), Mississippi's "voucher" rule prevented a defendant from impeaching a witness who had previously confessed to the crime. The Court determined that the rule, "as applied in this case, plainly interfered with [the defendant's] right to defend against the State's charges." Chambers, 410 U.S. at 298, 93 S. Ct. at 1047; see Welcome v. Vincent, 549 F.2d 853, 858-59 (2d Cir. 1977) ("We hold that to restrict examination of such a witness, so that his prior confession may not be proven, is to deny the defendant a fair trial, at least when the confession, though retracted, has some semblance of reliability.").

However, the Supreme Court has never held voucher rules unconstitutional per se. Rather, Chambers explicitly limited its holding to the "facts and circumstances of [the] case" before it. Id. at 302-03, 93 S. Ct. at 1049 (citing the importance of the fact that the defendant was also forbidden to introduce hearsay testimony of the witness's confession); see Lipinski, 557 F.2d at 292 ("The touchstone established by Chambers . . . is simply that of fundamental fairness."). The Second Circuit has similarly declined to "'constitutionalize' the law of evidence pertaining to the use of prior statements of a witness." Welcome, 549 F.2d at 858.

34

Thus, no clearly established federal law exists to require that defendants have the ability to cross-examine and impeach their own witnesses, and Petitioner must satisfy the more onerous standard for attacking a correct state evidentiary ruling. A voucher rule may disproportionately infringe on a weighty interest of the accused if the state court's ruling "significantly undermined fundamental elements of the accused's defense." Scheffer, 523 U.S. at 315, 123 S. Ct. at 1267-68; see Hawkins, 460 F.3d at 246 (denying habeas corpus based on a correct evidentiary ruling where the petitioner failed to establish a violation of his "right to a meaningful opportunity to present a defense"). At a minimum, to meet this standard Petitioner must show that Willis's earlier, allegedly contradictory statements bore "some semblance of reliability." Welcome, 549 F.2d at 859; see Gorchulski v. Henderson, 637 F.2d 50, 55 (2d Cir. 1980) ("[I]t is important to note that [the petitioners in] both [Chambers and Welcome] directed the reviewing court's attention to the reliability of the evidence sought to be introduced by the defendant.").

Petitioner cannot establish any constitutional violation. Willis testified at trial that she saw Hargis's killer fleeing the scene, but she had not gotten a good look at him and was unable to identify him. When asked if she saw the person in the courtroom, she indicated that she did not. The evidence Petitioner sought to elicit through impeachment was that, prior to trial, an investigator working for Petitioner had shown Willis a photo array

that contained Petitioner's picture, and Willis stated that she did not see the shooter in the array.  (See Tr. 4 at 1996.)  Defense counsel argued that Willis previously did not deny being able to identify the perpetrator, and her failing to identify Petitioner in the array was exculpatory.

Thus, Willis did not actually make an earlier statement that was exculpatory for Petitioner.  Instead, Petitioner sought to capitalize on an arguable implication of what she did not say.  He wanted to contend that since Willis did not tell his investigator that she could not recognize the perpetrator, she could in fact identify the fleeing man, and it was not Petitioner — otherwise, she would have selected him from the photo array.  The exculpatory value of this unspoken inference is de minimis.  Because it could not have given rise to a reasonable doubt of Petitioner's guilt, he cannot satisfy even the more lenient standard for attacking an incorrect evidentiary ruling.  See Hawkins, 460 F.3d at 243-45.

Furthermore, there was no way to determine the "reliability" of the inference, which arose out of an interaction between Willis and the investigator that was not demonstrated through competent evidence.  See Welcome, 549 F.2d at 858.  Willis's ability to identify the perpetrator was also not reliable because, as she testified, she was only able to view a "flash of [the fleeing man's] face," because he was running so fast and she was looking out of her third-floor window.  (Tr. 4 at 1963: 10; see id. at 1962-63, 1982, 1990.)  Moreover, under New York law, Willis's prior

36

statements could only be used for impeachment purposes, not as affirmative evidence. See N.Y. C.P.L. § 60.35(2); <u>Williams v. Donnelly</u>, Nos. 00-CV-4445 (DGT), 00-CV-4447 (DGT), 00-CV-4448 (DGT), 2005 WL 2290592, at *25 (E.D.N.Y. Apr. 12, 2005). Thus, unlike evidence that someone other than the defendant had confessed to the crime, such as in <u>Chambers</u>, the evidence Petitioner sought to develop was unreliable and of dubious value. Prohibiting the cross-examination of his own witness therefore did not impair a fundamental element of Petitioner's defense, or infringe any other weighty interest. See <u>Collins v. Barto</u>, No. 05 Civ. 9387 (RWS), 2007 WL 2398778, at *8, 14 (S.D.N.Y. Aug. 14, 2007) (concluding that, as opposed to the right to testify in one's own defense and right to present witnesses at trial, exclusion of certain evidence did not infringe a weighty interest).

In addition, Petitioner's counsel was able to develop a complete defense in spite of his inability to cross-examine and impeach Willis. Petitioner's counsel was able to call other witnesses, including Cucutta, who established an alibi for Petitioner, and Turner and Harris, who claimed to see the fleeing perpetrator at a much closer distance than Willis, and who affirmatively testified he was not Petitioner. Defense counsel also argued in summation that Petitioner had not killed Hargis and emphasized the holes in the prosecution's case, including misidentification. (See <u>id.</u> at 2493-296, 2506-09.) See <u>Malinowski v. Smith</u>, 509 F.3d 328, 337 (7th Cir. 2007) (holding that where a

37

defendant is able to put on a complete defense in other ways, excluding testimony regarding credibility does not rise to the level of a "clear violation of federal law"); <u>McLean v. McGinnis</u>, 29 F. Supp. 2d 83, 98-99 (E.D.N.Y. 1998) (determining that where the defense case is built through alternate evidence, there is no constitutional violation stemming from the preclusion of witness's prior statements), <u>aff'd</u>, 189 F.3d 461 (2d Cir. 1999).

Thus, Petitioner's claim that defense counsel's inability to cross-examine and impeach Willis violated his Confrontation Clause rights is without merit. Because Petitioner's Confrontation Clause claim is both procedurally defaulted and meritless, it should be dismissed.

### III. Remaining Non-Counsel Claims

Petitioner asserts three additional claims that are independent from his ineffective assistance of counsel claims: (1) the trial evidence was insufficient as a matter of law to establish his guilt; (2) the prosecution failed to provide <u>Brady</u> material when it did not disclose prior to trial the identity of a witness who had identified Petitioner in a lineup; and (3) Neptune's in-court identification of Petitioner should have been suppressed as unduly suggestive. As it did before the <u>coram</u> <u>nobis</u> court, Respondent asserts that these claims are unexhausted and procedurally forfeited because Petitioner first asserted them in his <u>coram</u> <u>nobis</u> application. (<u>See</u> Resp't Mem. at 47-48.) Respondent contends that Petitioner should have raised them in his

38

direct appeal to the Appellate Division and in his application for leave to appeal to the New York Court of Appeals.   Alternatively, Respondent argues that the claims have been procedurally defaulted on the basis of an independent and adequate state procedural rule. (See id. at 49 n.15.)

The Appellate Division summarily denied Petitioner's application.  (See Resp't Ans. Ex. W.)  Because Petitioner raised his insufficiency of the evidence, Brady, and in-court identification claims in a motion that was not authorized by New York law, the claims were procedurally defaulted pursuant to an independent and adequate state rule.  In any event, the claims are also meritless.

A. Procedural Default

As discussed supra, before a federal habeas court can reach the merits of a claim, it must determine whether review of the claim is barred on the basis of an adequate and independent state ground.  See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.  "The doctrine [of procedural default] applies whether the default occurred at trial, on appeal or on state collateral review." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)

Since Petitioner's insufficiency of the evidence, Brady, and in-court identification claims are record-based, he was required to raise the claims on direct appeal.  See N.Y. C.P.L. § 440.10(2)(c). He did not do so, but instead asserted them in his coram nobis application, which the Appellate Division summarily denied.  (See

Resp't Ans. Ex. W.)   In light of the State's argument that the
claims were inappropriately raised in that forum, the Appellate
Division's decision can reasonably be construed as resting on an
independent state procedural rule.[5]   See Aparicio, 269 F.3d at 87
n.1. ("Thus far, [the use of coram nobis] has been sanctioned by
the Court of Appeals only in the context of ineffective assistance
of  appellate  counsel."),  and  at  92-93  (concluding  that  the
Appellate Division's summary denial of an ineffective assistance of
trial counsel claim "had to rest on a state procedural bar" where
it was raised in a coram nobis petition, but should have been
raised  on  direct  appeal).   Moreover,  New  York's  statutory
requirement that matters discernible from the trial record must be
raised on direct appeal is regularly followed and an adequate state
procedural bar. See Clark v. Perez, 510 F.3d 382, 393 (2d Cir.
2008); Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003).

It  follows  that  Petitioner  cannot  obtain  relief on  his
procedurally defaulted claims "unless [he] can demonstrate cause .
. . and actual prejudice . . . or demonstrate . . . a fundamental
miscarriage of  justice," under  the  standards  already  explained

---

[5] These claims are also unexhausted, since they were never
presented to the New York Court of Appeals in seeking
discretionary review.   In his application for permission to
appeal, Petitioner sought review only of his claims of
ineffective assistance of appellate counsel.   (See Resp't Ans.
Ex. X.)   To exhaust a claim it must go through a full round of
review in the state courts and be presented to the highest state
court that can consider it.   See Daye v. Attorney General, 696
F.2d 186, 190 n.3 (2d Cir. 1982) (en banc); see also infra
discussion in Part IV-C.

supra.  Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.  Petitioner
asserts that his appellate counsel was ineffective for failing to
raise   these   claims   on   direct   appeal.      Unconstitutional
ineffectiveness can serve as "cause" for a procedural default.
However, as discussed infra, Petitioner's appellate counsel was not
ineffective.  Among other reasons for this, the claims Petitioner
contends counsel should have raised on appeal, including the three
defaulted claims, are meritless and would have had no chance of
success.   In addition, because these claims lack merit for the
reasons   fully   explained   below,   Petitioner   cannot   establish
prejudice resulting from their omission on appeal.   See Raupp v.
United States, No. 06 Civ. 7161, 2007 WL 4142773, at *8 (S.D.N.Y.
Nov. 15, 2007) ("Moreover, [the petitioner] has failed to show
prejudice by failing to identify any issue that would have had a
reasonable  probability  of  success  on  appeal.").     The  Court
therefore recommends dismissing each of them with prejudice.

   B.  Insufficiency of the Evidence

   Petitioner contends that the prosecution did not carry its
burden of proving his guilt beyond a reasonable doubt.  (See Pet.
at 25-26.)  He claims that there was no eyewitness to the murder
and that no witness affirmatively stated that he or she saw
Petitioner kill Hargis.   (See id.)   Petitioner's claim is
meritless.

   A "sufficiency of the evidence" claim is based on federal due
process principles.  See Jackson v. Virginia, 443 U.S. 307, 317-19,

99 S. Ct. 2781, 2788-89 (1979) (commenting that the Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reasonable doubt); cf. People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 763 (1987) (holding that unlike a "weight of the evidence" claim, which is based on a court's factual review power, a "sufficiency of the evidence" claim is based on the law). It is well established "that '[i]n challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden.'" United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998) (quoting United States v. Giraldo, 80 F.3d 667, 673 (2d Cir. 1996)) (alteration in the original); accord Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993). To overturn a conviction based on insufficiency of the evidence, a petitioner must establish that, viewing "the evidence in the light most favorable to the State . . . no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002); accord Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; see also Dixon, 293 F.3d at 81 ("[T]he government receives the benefit of having all permissible

42

inferences drawn in its favor.").

There was ample evidence at trial to support proof of Petitioner's guilt beyond a reasonable doubt. Some witnesses testified that, for $5,000, Petitioner offered to "handle some business" for Layton, who had just been in a fight with Hargis. (Tr. 2 at 421:22-23.) On the day of the shooting, Petitioner flashed the handle of a gun under his shirt and announced, "it's on." (See id. at 435:15; see also id. at 435-36.) Two witnesses testified that Petitioner was seen near Hargis's apartment building before the shooting, and running out of the building after they heard gunshots. (See id. at 420-25, 473-75, 525-26.) Still other eyewitnesses identified Petitioner as the shooter to the police, and offered a description of the shooter matching that of Petitioner. (See id. at 473:13-16, 474-75, 525-26.) Additional witnesses provided evidence revealing a scheme by Petitioner to frame Bunce. (See id. at 1356-59, 1361-66, 1374-77.)

It is well-established that testimony of one eyewitness can be enough to support a conviction, and, in the instant case, multiple witnesses implicated Petitioner in Hargis's murder.[6] In light of this substantial evidence, Petitioner's sufficiency of the evidence claim is meritless. See People v. Calabria, 3 N.Y.3d 80, 82, 783

---

[6] Although other witnesses testified that Petitioner was not the person whom they saw fleeing from Hargis's building, it was the jury's province to determine whether their testimony, as opposed to that of the State's witnesses, was credible. Credibility is not a factor to be considered by a habeas court in determining whether evidence was legally sufficient to support a conviction.

N.Y.S.2d 321, 322 (2004) (describing how even testimony from a single eyewitness is enough to support a guilty verdict) (citing People v. Arroyo 54 N.Y.2d 567, 578, 446 N.Y.S.2d 910 (1982)).

C. *Brady* Violation

Petitioner claims that the prosecution violated his rights under Brady, 373 U.S. at 83, 83 S. Ct. at 1194, by failing to disclose the identity of, and information about, a witness who had participated in a lineup identification procedure. (See Pet. at 25.)  Petitioner further asserts that this lack of disclosure prevented Petitioner from calling the witness at trial. (See id.) This claim is meritless.

Under Brady, the government violates due process when it fails to produce evidence favorable to the accused that is material either to guilt or to punishment. See Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97.  Evidence is favorable if it tends to show that the accused is not guilty or if it impeaches a prosecution witness. See United States v. Bagley, 473 U.S. 667, 675-76, 105 S. Ct. 3375, 3380 (1985); Boyette v. Lefevre, 246 F.3d 76, 90 (2d Cir. 2001). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682, 105 S. Ct. at 3383; accord Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 1565 (1995); see also Chacko v. United States, No. 96 Cr. 519 (JGK), 00 Civ. 405 (JGK), 2000 WL 1808662, at *4 (S.D.N.Y. Dec. 11, 2000). Thus, "a Brady violation requires

44

that (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the government, whether willfully or inadvertently; and (3) prejudice ensued." United States v. Warren, 306 Fed. App'x 682, 686 (2d Cir. 2009) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999)); see also Boyette, 246 F.3d at 89.   Such prejudice is necessary in order to satisfy the "material" requirement in Brady.   See Strickler, 527 U.S. at 281-82, 119 S. Ct. at 1948-49.

Petitioner's Brady claim fails all three parts of the test. First, there is no evidence that the identity of, or additional information about, the witness would have been helpful to Petitioner in any way.   After viewing the lineup, the witness stated to a police officer that either Petitioner, or a lineup stand-in, killed Hargis – whichever of them had braids at the time of the murder.   (See Tr. 1 at 24-25.)   In fact, since the prosecution had other witnesses who testified that Petitioner had braids at the time of the shooting (see id. at 23), testimony from this witness would actually have been harmful to Petitioner, not exculpatory.   See Nunez v. Costello, No. 93 Civ. 5282 (JSM), 1994 WL 719686, at *5 (S.D.N.Y. Dec. 28, 1994) (holding that for non-exculpatory information that "tends to establish the defendant's guilt . . . the prosecution . . . ha[s] no duty under Brady . . . to disclose it").

Moreover, the prosecution did not suppress the evidence.

45

Generally, <u>Brady</u> material must be disclosed in time for a defendant's effective use of the information at trial. <u>See United States v. Douglas</u>, 525 F.3d 225, 245 (2d Cir. 2008) (citing <u>In re United States (Coppa)</u>, 267 F.3d 132, 135 (2d Cir. 2001)). <u>Brady</u> material that is not disclosed within such sufficient time "may be deemed suppressed within the meaning of the <u>Brady</u> doctrine." <u>Douglas</u>, 525 F.3d at 245 (citing <u>Leka</u>, 257 F.3d at 103).

In the instant case, there was no failure to disclose that would constitute such suppression. During a pre-trial hearing, Petitioner's counsel asked for the release of the identity of the witness whose name had been kept confidential pursuant to a protective order. (<u>See</u> Tr. 1 at 26.) Discussion between Petitioner's counsel, the prosecutor, and the court ensued, resulting in the court setting limitations on what information needed to be released to defense counsel in order for the prosecution to be in compliance with New York disclosure requirements. (<u>See id.</u> at 32-33.) The prosecution did not call the unidentified witness at trial, and, before the trial commenced, it turned over police reports regarding the lineup. (<u>See id.</u> at 198-201.) Thus, defense counsel was informed about the statement of the witness and also about the circumstances surrounding her statement; the only information not disclosed was the witness's identity, withheld due to the court's adherence to its earlier protective order.

In addition, there is nothing in the record to suggest that

46

Petitioner was disadvantaged by not viewing the line-up report earlier. Petitioner's trial counsel objected to not having viewed the report before it was given to a police witness at the pre-trial hearing. Once he obtained a redacted copy from the prosecution, however, he made no further objection to the report. (See Tr. 1 at 198-202.) Moreover, the report was not offered in evidence and the witness whose identity was withheld was not called to testify at the trial. Petitioner's counsel's willingness to proceed with the trial without further objection, and without any attempt to call the unidentified witness at trial, suggests there was no failure to timely disclose Brady material.

In sum, the witness's identity was neither material to Petitioner's guilt or innocence, nor exculpatory. Because Petitioner's Brady claim fails under all three parts of the test, it is without merit.

D. In-Court Identification

Petitioner contends that his in-court identification by Leslie Eugene Neptune was obtained under suggestive circumstances. Petitioner asserts that since the identification took place at trial, when Petitioner was seated with defense counsel, it also lacked independent reliability to overcome that suggestiveness. (See Pet. at 17-18.) Neptune had not previously been asked to identify Petitioner, nor had he done so.

When an identification of a defendant is so impermissibly suggestive and unreliable as to lead to "a very substantial

47

likelihood of irreparable misidentification," it must be excluded
in order to preserve the defendant's due process rights.   Manson
v. Brathwaite, 432 U.S. 98, 116, 97 S. Ct. 2243 (1977) (quotation
marks and citation omitted); accord Kennaugh v. Miller, 289 F.3d
36, 43 (2d Cir. 2002).   The United States Supreme Court, however,
has never held that the mere fact that an identification of a
defendant takes place in court renders it unduly suggestive and
unreliable. See Kennaugh, 289 F.3d at 41   (discussing Supreme
Court cases).   Instead, such in-court identifications are subject
to the reliability standard established in Brathwaite and Neil v.
Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), taking into account
the totality of circumstances, including such factors as "the
opportunity of the witness to view the criminal at the time of the
crime, the witness' degree of attention, the accuracy of his prior
description of the criminal, the level of certainty demonstrated
at the confrontation, and the time between the crime and
confrontation." Manson, 432 U.S. at 114, 97 S. Ct. at 2253. See
also Kennaugh, 289 F.3d at 46-47; United States v. Matthews, 20
F.3d 538, 547 (2d Cir. 1994); United States v. Archibald, 734 F.2d
938, 842 (2d Cir. 1984)), reh'g denied, 756 F.2d 223 (2d Cir.
1984).

       In addition, New York courts accept that in-court
identifications need not be improperly suggestive, because the
defendant is given an opportunity to argue weaknesses in, and the
suggestiveness of, the identification to the jury, and the

proceedings are overseen by a judge.   See People v. Madison, 8
A.D.3d 956, 957, 778 N.Y.S.2d 593, 594-95 (4th Dep't 2004)
(quoting People v. Brazeau, 304 A.D.2d 254, 257, 759 N.Y.S.2d 268,
271 (4th Dep't 2003)).

In the instant case, there was no determination as to the
reliability of the in-court identification because no objection
was registered to the identification.[7]   That, however, does not
preclude a finding that Petitioner's due process rights were not
violated because, if there was any error in the admission of
Neptune's identification testimony, it was harmless.   See
Kennaugh, 289 F.3d at 48 (even where it was "dubious whether the
state court did anything at all to safeguard the due process
protections stated in Manson," there was no constitutional
violation because, in light of the independent, powerful evidence
of guilt, any error in allowing the identification was harmless);
Raheem v. Kelly, 257 F.3d 122, 142 (2d Cir. 2001)(applying
harmless error analysis to identification evidence, by looking at
the importance of the challenged testimony, whether it was

---

[7] Mr. Neptune testified that he observed the person fleeing from
Hargis's building from his fifth-floor window.  The person was
walking quickly.  He observed his face and clothing.  Although
there was a police interview report that indicated that Neptune
told the police that the man had his face covered, and, thus,
Neptune could not see his face, at the trial he testified that
was an erroneous notation because he never said that to the
police.  Instead, he testified that he saw the person's face, he
would never forget it, and he saw him again on the street about
thirty minutes after he fled.  He identified Petitioner at the
trial as the person he saw fleeing from the scene of the crime,
and said that if Petitioner was not that person, he looked like
him. (See Tr. 2 at 805-33.)

corroborated and cumulative, and the overall strength of the prosecution's case); <u>Archibald</u>, 734 F.2d at 943 (same).

As discussed <u>supra</u>, the evidence against Petitioner was extremely strong, with several witnesses who knew Petitioner identifying him as agreeing, in exchange for $5,000, to take care of Layton's "business" with Hargis; those witnesses also saw him flee Hargis's building after they heard gunshots from within the building.   Moreover, at trial, defense counsel conducted a thorough cross-examination of Neptune. (<u>See</u> Tr. 2 at 817-28.) Trial counsel even obtained a stipulation that Neptune had told the police prior to trial that he had not been able to see the face of the fleeing shooter.   (<u>See</u> Tr. 2 at 821.) He further attacked Neptune's identification, reminding the jury that Neptune's view was only a "fleeting glance" of the perpetrator of the crime, who was covering his face with his hand.   (<u>See</u> <u>id.</u> at 2496:10.)   Trial counsel also posited that Neptune identified Petitioner because he was "a black man sitting between two lawyers."   (<u>Id.</u> at 2498:15-16; <u>see also</u> <u>id.</u> at 2494-98.)

Thus, trial counsel attacked Neptune's in-court identification in exactly the way New York law envisions.   <u>See</u> <u>Madison</u>, 8 A.D.3d at 957, 778 N.Y.S.2d at 593 (discussing that in-court identifications are frequently not suggestive because defense counsel has the opportunity to cross-examine the witness and emphasize the weaknesses in the testimony to the jury). Therefore, at most, Neptune's in-court identification of

Petitioner was harmless error. <u>See</u> <u>Kennaugh</u>, 289 F.3d at 48 ("When we combine the powerful independent evidence of petitioner's guilt . . . [and] the fact that on cross-examination, the petitioner was able to effectively challenge the credibility and reliability of . . . [the] in-court identification, we are bound to conclude that any error that there may have been in failing to test directly the reliability of . . . [the witness's] testimony was harmless."); <u>Holmes v. Artus</u>, No. 03 Civ. 7065 (LAP), 2008 WL 512786, at *2-3 (S.D.N.Y. Feb. 26, 2008) (evidence of unduly suggestive identification was harmless, given the strength of the state's case, the importance of the identification evidence, and lack of emphasis put on it in the prosecutor's summation).

Petitioner's claim regarding Neptune's in-court identification is therefore meritless.

## IV. Ineffective Assistance of Trial Counsel

Petitioner contends he was denied effective assistance of counsel on five grounds: (1) counsel waived Petitioner's right to testify before the grand jury; (2) counsel failed to call key witnesses at trial; (3) counsel failed to object that the prosecution did not meet its burden of proving Petitioner's identity beyond a reasonable doubt; (4) counsel failed to object to the introduction of suggestive identification testimony; and (5) counsel did not object to the prosecution's failure to disclose <u>Brady</u> material. (<u>See</u> Pet. at 21-24.)

51

Some of Petitioner's claims appear to be exhausted, while others are clearly unexhausted. In any event, all are subject to dimsissal because they are meritless. See 28 U.S.C. § 2254(b)(2) (authorizing consideration of unexhausted claims for the purpose of dismissing them).

A. Legal Standard

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish (1) that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984), and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, 104 S. Ct. at 2068; accord Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004). "This two-prong test applies to the evaluation of appellate counsel as well as trial counsel." Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000) (citations omitted).

In evaluating the reasonableness requirement, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted); accord Cox, 387 F.3d at 198. The Second Circuit has defined a "strategic decision" as a

52

"conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox, 387 F.3d at 198 (quoting Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001)).  A court must not use "perfect hindsight to criticize unsuccessful . . . strategies." Eze v. Senkowski, 321 F.3d 110, 132 (2d Cir. 2003); see Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Cox, 387 F.3d at 198.

The "reasonable probability" of prejudice prong of Strickland is defined as "a probability sufficient to undermine confidence in the outcome" of the state proceedings.  Strickland, 446 U.S. at 694, 104 S. Ct. at 2068; see also Cox, 387 F.3d at 199 ("The level of prejudice [a petitioner] need demonstrate lies between prejudice that had 'some conceivable effect' and prejudice that more likely than not altered the outcome in the case.") (quoting Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001)); United States v. McCloud, 303 Fed. Appx. 916, 920 (2d Cir. 2008) (holding that when ineffective assistance of counsel claims are without merit, they are unable to "demonstrate the prejudice required by the second prong of Strickland").  A court must review the prejudicial effect of counsel's errors in the aggregate.  See Lindstadt, 239 F.3d at 199.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 446 U.S. at 700, 104 S. Ct. at 2071.

For the purposes of AEDPA, it is well settled that the

Strickland standard constitutes the relevant "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Aparicio, 269 F.3d at 95 & n.8; Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001). Thus, on habeas review, the question before a court is not whether, as a de novo matter, the court finds counsel to have been effective or ineffective; rather, the relevant question is whether the state court decision addressing the issue involved an "unreasonable application" of the Strickland standard to the facts of the petitioner's case. See Sellan, 261 F.3d at 314-15 & n.6.

B. Exhaustion and Procedural Bar for Claims Based on Key Witnesses and Grand Jury Testimony

Petitioner's ineffective assistance of counsel claims based on the failure to call key witnesses and his inability to testify before the grand jury were included in his C.P.L. § 440.10 motion, in his supplemental brief filed in conjunction with that motion in the Appellate Division, and in his application for leave to appeal to the New York Court of Appeals. (See Resp't Ans. Ex. F at 12-16; Resp't Ans. Ex. L at 7-8; Resp't Ans. Ex. P.) The Appellate Division seemed to recognize that these claims were properly brought in a § 440 motion, since they "requir[ed] expansion of the trial record." Stewart, 745 N.Y.S.2d at 152, 295 A.D.2d at 249. Nevertheless, the Appellate Division concluded that "[Petitioner's] papers were deficient in that they lacked an affirmation from trial counsel explaining his strategic decisions,

54

or any explanation for the absence of such affirmation." Id. at 152-53, 295 A.D.2d at 249-50. While faulting Petitioner for failing to comply with § 440,[8] in an alternative ruling, the Appellate Division concluded that trial counsel's actions appeared to have been "strategic decision[s]" that might have been made "by a reasonably competent attorney." Stewart, 745 N.Y.S.2d at 153, 295 A.D.2d at 250. Since Respondent does not argue that the claims are not exhausted or that they are procedurally barred, and since each of Petitioner's ineffective assistance of trial counsel claims fails under Strickland, the Court will address the merits of the claims.

### 1. Key Witnesses

Petitioner contends that he received ineffective assistance of counsel when trial counsel failed to call as witnesses individuals who could substantiate Petitioner's alibi and who could affirmatively testify that Petitioner was not the murderer. (See Pet. 21-23.) The Appellate Division held that this decision "was a strategic decision and there is no basis for finding that this decision constituted ineffective assistance of counsel," especially since trial counsel interviewed the witnesses whom Petitioner claims should have been called. Stewart, 745 N.Y.S.2d at 153, 295 A.D.2d at 250.

---

[8] Although it might be argued that this was an independent and adequate state bar, Respondent does not make that argument, and the case law does not appear to support it. See Rosa v. Herbert, 277 F. Supp. 2d 342, 350-54 (S.D.N.Y. 2003).

Petitioner cannot demonstrate that trial counsel's decision was unreasonable under the first prong of <u>Strickland</u>. A defense attorney's "decision as to 'whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation.'" <u>Best</u>, 219 F.3d at 201 (quoting <u>United States v. Schmidt</u>, 105 F.3d 82, 90 (2d Cir. 1997)); <u>see</u> <u>United States v. Smith</u>, 198 F.3d 377, 386 (2d Cir. 1999). Since declining to call a witness is normally attributable to plausible trial strategy, such a decision rarely rises to the level of a constitutional violation. <u>See</u> <u>Curry v. Burge</u>, No. 03 Civ. 0901 (LAK) (AJP), 2004 WL 2601681, at *28 (S.D.N.Y. Nov. 17, 2004) (citing cases), <u>Report and Recommendation adopted by</u> No. 03 Civ. 0901 (LAK), 2005 WL 106490 (S.D.N.Y. Jan. 19, 2005); <u>Fu v. Costello</u>, No. 03 Civ. 5746 (LAK) (GWG), 2004 WL 2053254, at *10 (S.D.N.Y. Sept. 14, 2004) ("[T]he choice whether or not to call a particular witness is a strategic choice that is virtually unchallengeable . . . .") (internal quotation marks omitted), <u>Report and Recommendation adopted by</u> No. 03 Civ. 5746 (LAK), 2004 WL 2847855 (S.D.N.Y. Dec. 10, 2004).

There were several issues surrounding the witnesses' credibility that would have led a competent defense attorney to make the same decision that Petitioner's counsel made. One potential witness, Jesse Griffin, had a prior criminal history and was incarcerated at the time for a parole violation. Thus, Griffin's credibility would have been subject to challenge. In

addition, even though Griffin purportedly would have testified that Petitioner did not kill Hargis, Griffin knew Petitioner, referring to his nickname of "sha sha." (See Petitioner's Supplemental § 440.10 Motion ("Pet.'s Supp. 440") Ex. A, Resp't Ans. Ex. G.) Moreover, it appears that Griffin was present at the trial, and had to be separated from another witness for fighting with her. (See Tr. 4 at 1992.)

Another witness, Rimell Mitchell, had collaborated with Petitioner to frame Bunce for the murder (see Tr. 3 at 1115, 1393), suggesting that since Mitchell had already lied for Petitioner once, he would be willing to do it again. Moreover, the only potentially useful testimony from Mitchell involved an incredible explanation for why the letters framing Bunce were written in Petitioner's handwriting. (See Pet.'s Supp. 440 Ex. C, Resp't Ans. Ex. G.) The third witness whom Petitioner asserts should have been called, Kerry Ross, claimed that he witnessed the murder of Hargis and that Petitioner was not the murderer. However, Ross was under the mistaken impression that Petitioner had been incarcerated at the time of Hargis's murder. (See Pet.'s Supp. 440 Ex. B, Resp't Ans. Ex. G.) Moreover, while Griffin described the fleeing perpetrator as dark-skinned, Ross described him as light-skinned. Thus, the credibility of these witnesses was suspect.

As the Appellate Division concluded, there were valid strategic reasons why a competent attorney would not have called

these witnesses.  See Stewart, 5 N.Y.S.2d at 153, 295 A.D.2d at 250.  Because this conclusion did not represent an unreasonable application of the Strickland standard, this Court recommends that Petitioner's ineffective assistance of counsel claim based on witness choice be dismissed.[9]

   2. Grand Jury

   Petitioner claims that trial counsel was ineffective in waiving his right to testify before the grand jury.  The Appellate Division held that "defendant failed to demonstrate the absence of legitimate explanations for counsel's waiver of the defendant's right to testify before the Grand Jury, which followed denial of his request for an adjournment."  Stewart, 745 N.Y.S.2d at 153, 295 A.D.2d at 250.

   There is no need to assess the reasonableness of trial counsel's decision to cancel Petitioner's grand jury appearance, because even if counsel's actions "fell below an objective standard of reasonableness," Petitioner clearly cannot meet the second prong of Strickland.  Petitioner was afforded a jury trial and chose not to testify before the petit jury.  Therefore, "[a]ny prejudice suffered by petitioner was rendered harmless by his conviction at trial by the petit jury, which assessed his guilt under a heightened standard of proof."  Turner v. Fisher, No. 01 Civ. 3241 (JBW), 2003 WL 22284177 at *6 (E.D.N.Y. Aug. 20, 2003)

---

[9] As noted, defense counsel did call other witnesses who provided an alibi for Petitioner and who testified that the man fleeing from Hargis's building was not Petitioner.

(citing <u>Lopez</u>, 865 F.2d at 32, and failing to find ineffective assistance of counsel where attorney waived, without petitioner's consent, petitioner's right to testify before the grand jury). In other words, Petitioner fails to demonstrate that there is a "reasonable probability that, but for" trial counsel's actions in waiving Petitioner's appearance before the grand jury, "the result of [Petitioner's trial] would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

Because Petitioner cannot satisfy the second prong of <u>Strickland</u>, the Appellate Division's rejection of this claim was not an unreasonable application of clearly established federal law. Therefore, the Court recommends that Petitioner's ineffective assistance of counsel/grand jury claim be dismissed.

C. <u>Remaining Unexhausted Ineffective Trial Counsel Claims</u>

Petitioner's remaining claims of ineffective assistance are based on trial counsel's failure to object to the insufficiency of the evidence, failure to assert and preserve a <u>Brady</u> violation, and failure to object to Neptune's in-court identification. None of these claims was raised on direct appeal or in Petitioner's § 440 motion. To satisfy the exhaustion requirement of 28 U.S.C. § 2254, the claims must be "fairly presented" to the highest state court from which a decision can be had. <u>See</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); <u>Daye</u>, 696 F.2d at 191; <u>accord</u> <u>Morgan v. Bennett</u>, 204 F.3d 360, 369 (2d Cir. 2000); <u>Pesina v. Johnson</u>, 913 F.2d 53, 54 (2d Cir. 1990). Petitioner did

not do so, and his claims are therefore unexhausted.

A petitioner must return to state court if he has not exhausted his state remedies. See Engle v. Isaac, 456 U.S. 107, 125-126 n.28, 102 S. Ct. 1558, 1570 (1982); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991); Robertson v. Artuz, No. 97 Civ. 2561 (DC), 2000 WL 10265, at *3 (S.D.N.Y. Jan. 4, 2000). However, for exhaustion purposes, "'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" Grey, 933 F.2d at 120 (quoting Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9 (1989)). If a petitioner has no available state forum in which to pursue a remedy because of a state procedural rule, his claim may be deemed exhausted, yet procedurally barred. See Teague v. Lane, 489 U.S. 288, 297-299, 109 S. Ct. 1060, 1068-1069 (1989); Grey, 933 F.2d at 120. That is the case here: the remaining claims against trial counsel are all based on failures to object during trial and are therefore discernible from the record. See N.Y. C.P.L. § 440.10(2)(c). Under New York law, record-based claims for upsetting a conviction must be raised on direct appeal. See id.; Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003). Since Petitioner has already had the one direct appeal to which he is entitled, see Spence v. Sup't, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000), he cannot return to state court to assert those claims. They are thus procedurally defaulted. Spence, 219 F.3d 162, 170;

Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Roa v. Portuondo, 548 F. Supp. 2d 56, 60 (S.D.N.Y. 2008).

In any event, because, as discussed supra, Petitioner's insufficiency of the evidence claim, Brady claim, and in-court identification claim lack merit as independent claims, it follows that Petitioner cannot satisfy Strickland on the basis of counsel failing to pursue or preserve these claims.  This is because (1) an attorney does not act unreasonably in not pursuing a meritless claim, and (2) had the claims been pursued, they would not have succeeded or altered the outcome of Petitioner's trial.   See McCloud, 303 Fed. Appx. at 920 (holding that trial counsel's failure to object cannot constitute ineffective assistance of counsel if the objection would have been meritless); United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990) ("In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed.") (citing Kimmelman v. Morrison, 477 U.S. 365, 375-76, 106 S.Ct. 2574, 2583, (1986)).[10]

**IV. Ineffective Assistance of Appellate Counsel**

Petitioner claims that he was denied effective assistance of appellate counsel because counsel failed to advance each of the

---

[10] In fact, defense counsel did move for an order of dismissal, arguing that Petitioner's identification as the murderer had not been established by credible evidence. (See Tr. 3 at 1440.)

following four claims: (1) the prosecution failed to prove every essential element of the crime charged beyond a reasonable doubt; (2) the court permitted an in-court identification of Petitioner that was obtained under suggestive circumstances and that lacked independent reliability; (3) Petitioner's constitutional right to due process was violated when the prosecution withheld Brady material; and (4) Petitioner received ineffective assistance of trial counsel. (See Pet. at 25-26.)

Respondent does not dispute that this claim is exhausted. Petitioner included the claim in his application for a writ of error coram nobis and in his application for leave to appeal the denial of his coram nobis petition, thus exhausting the appropriate state remedies before bringing the claim in this Court. (See Resp't Ans. Ex. V, X.) See also Fayton v. Connolly, No. 06 Civ. 3685 (SAS), 2009 WL 1615995, at *3 (S.D.N.Y. June 9, 2009) ("In New York, a prisoner may exhaust a claim not raised on appeal through collateral proceedings, such as an application for a writ of error coram nobis. . . . [T]he claim must be presented to 'the highest state court from which a decision can be had.'") (quoting Daye, 696 F.2d at 190 n.3). The Appellate Division denied Petitioner's claims. (See Resp't Ans. Ex. W.)[11]  Therefore,

---

[11] The Appellate Division's denial of Petitioner's coram nobis application constitutes a decision on the merits of the application, under 28 U.S.C. § 2254(d). See Sellan, 261 F.3d at 314 (holding that summary denial of a coram nobis application by the Appellate Division constitutes an adjudication on the merits); Rivera v. Duncan, No. 00 Civ. 4923 (WHP) (AJP), 2001 WL 1590240, at *8 (S.D.N.Y. Dec. 11, 2001) (Report and

the deferential AEDPA standard applies to review of the Appellate Division's denial of Petitioner's coram nobis application.

A. Legal Standard

Under the first prong of Strickland in the appellate context, it is not enough for a petitioner to argue simply that counsel did not raise certain non-frivolous arguments on appeal, as no duty to raise every such argument exists.  See Evitts v. Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 835 (1985); Aparicio, 269 F.3d at 95; see also Jones v. Barnes, 463 U.S. 745, 753-54, 103 S. Ct. 3308, 3313-14 (1983)(noting that where an attorney exercises reasonable professional judgment in selecting the most promising issues to raise on appeal, a reviewing court should not second-guess that judgment); Sellan, 261 F.3d at 317 ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting Smith v. Murray, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667 (1986)) (internal quotation marks omitted).  Thus, a petitioner must show that appellate counsel selected grounds for appeal unreasonably, such as by "omitt[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Clark, 214

---

Recommendation, adopted on Oct. 20, 2003) ("In light of the First Department's substantive, albeit summary, ground . . . for denying [the] petition, this Court concludes that the First Department adjudicated [the] ineffective appellate counsel claims 'on the merits,' and therefore that the AEDPA's deferential review standards apply.").

F.3d at 322 (quoting <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994)); <u>cf.</u> <u>Hemstreet v. Greiner</u>, 367 F.3d 135, 141-42 (2d Cir. 2004) (finding that appellate counsel failed the first <u>Strickland</u> prong when he did not "pursue[] any remedy for the intimidation of a crucial witness," which "clearly stood out in the trial record," and where failure to appeal constituted "a severe mistake in judgment"), <u>vacated on other grounds</u>, 378 F.3d 265 (2d Cir. 2004).

    B. <u>Appellate Counsel Was Not Ineffective</u>

    Petitioner was represented on appeal by Robert S. Dean, Esq., of the Center for Appellate Litigation.  Counsel submitted a well-written, thirty-three page brief to the Appellate Division, which argued that Petitioner had been denied a meaningful opportunity to testify before the grand jury and that Petitioner should have been allowed to impeach his own witness at trial.  (<u>See</u> Resp't Ans. Ex. K.)  Appellate counsel also filed a supplemental brief arguing that Petitioner's § 440.10 motion to vacate the judgment should not have been denied without a hearing.  (<u>See</u> Resp't Ans. Ex. L.) In addition, after Petitioner's conviction was affirmed, appellate counsel sought leave to appeal to the New York Court of Appeals, crafting his arguments to specifically address why the claims merited the attention of the Court of Appeals, and asking the Court of Appeals to review all of the arguments raised both in counsel's briefs to the Appellate Division and in Petitioner's C.P.L. § 440.10 motion.  (<u>See</u> Resp't Ans. Ex. P at 5.)

    The record does not reveal the existence of grounds for other

64

claims that would have held a greater potential for success. Indeed, Petitioner fails to alert the Court to any "significant and obvious issues" that would have been stronger than those actually raised on appeal, Clark, 214 F.3d at 322. Instead, Petitioner focuses on four claims that had no likelihood of success — again, these were appellate counsel's failure to argue (1) that the evidence at trial was insufficient, (2) that the prosecution had committed a Brady violation, (3) that Neptune's in-court identification was unduly suggestive and lacked reliability, and (4) that trial counsel was ineffective for failing to object to each of these issues.

Petitioner cannot succeed on his ineffective assistance of appellate counsel claims, because, as discussed supra, each of the claims he asserts appellate counsel should have raised have no merit. Cf. Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) ("Because [Petitioner's] ineffective assistance claim is based on counsel's failure to raise Fourth Amendment issues, he must also show that his Fourth Amendment claim is meritorious") (internal quotation marks omitted). Moreover, as to the insufficiency of the evidence, the Brady violation, and the in-court identification claims, none of them had been preserved for appellate review. Indeed, Petitioner faults his trial counsel for not sufficiently objecting when these issues arose. Thus, any effort by appellate counsel to raise these claims would have been futile. See Rogers, 281 A.D.2d at 241, 721 N.Y.S.2d at 533 (holding that defendant's

65

failure to object results in a failure to preserve such issues for review); see also C.P.L. § 470.05(2) (requiring trial counsel to make a contemporaneous objection in order to preserve an issue for appellate review).

Because appellate counsel acted in a reasonable manner, endorsing the claims that had the greatest likelihood of success, and omitting claims that could not succeed, the state court's denial of Petitioner's coram nobis application was a reasonable application of the Strickland standard.   Cf. Clark, 214 F.3d at 328 ("This is not a situation where counsel overlooked a 'sure winner' and focused only on clearly losing arguments.").

Accordingly, Petitioner's ineffective assistance of appellate counsel claim should be dismissed.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that Petitioner's request for habeas relief be denied and that this action be dismissed with prejudice.   Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued.   See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).   The Court further recommends that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a) and (d) (2008). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Pauley. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 145, 155, 106 S. Ct. 466, 470, 475 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: August 10, 2009
New York, New York